IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brenda Theresa McNair, | ) | Civil Action No. 8:13-cv-01218-MGL-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On April 19, 2010, Plaintiff protectively filed a claim for supplemental security income ("SSI"), alleging an onset of disability date of June 1, 2006. [R. 161–64.] Plaintiff later amended her alleged onset date to April 19, 2010. [R. 32.] The claim was denied initially on August 20, 2010 [R. 60–61] and was denied on reconsideration by the Social Security Administration ("the Administration") on December 3, 2010 [R. 62–63]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on October 28, 2011, ALJ Edward T. Morriss conducted a de novo hearing on Plaintiff's claims. [R. 29–59.]

The ALJ issued a decision on November 17, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 12–28.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since April 19, 2010, the application date and amended onset date. [R. 17, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease; early rheumatoid arthritis; and asthma. [R. 17, Finding 2.] At Step 3, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 17, Finding 3.] The ALJ expressly considered Listings 1.04 with respect to Plaintiff's disorders of the spine; Listings 14.02A and 14.09 with respect to Plaintiff's rheumatoid arthritis; and Listing 3.03 with respect to Plaintiff's asthma. [R. 17–18.] The ALJ also indicated that he considered the combined effects of Plaintiff's impairments and determined that the findings related to them were not at least equal in severity to those described in Listings 1.04, 3.03, or 14.09. [R. 18.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found she retained

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; however, the claimant requires a sit/stand option. She can occasionally climb stairs, balance, stoop, kneel, crouch and crawl but she can never climb ladders. She is limited to occasional overhead reaching bilaterally. Additionally, the claimant would need to avoid concentrations of extreme cold, extreme heat, wetness, humidity and fumes.

[R. 18, Finding 4.] Plaintiff has no past relevant work [R. 23, Finding 5]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that the she can perform. [R. 23, Finding 9.] Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act, since April 19, 2010. [R. 24, Finding 10.] Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined. [R. 1–7.] Plaintiff filed this action for judicial review on May 6, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded because the ALJ:

1. failed to follow the treating physician rule with respect to giving appropriate weight to Plaintiff's treating rheumatologist's opinion [Doc. 14 at 8–11];

2. failed to properly evaluate Plaintiff's credibility [*id*. at 11–14]; and

3. relied on flawed vocational expert testimony [*id*. at 14–16].

The Plaintiff also argues that new and material evidence from treating physician Dr. Supan provided to the Appeals Council warrants remand. [*id*. at 16–18.]

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

1.    reasonably determined the Plaintiff's RFC by explaining his reasons for discounting the opinion of Dr. Brittis and properly considering Plaintiff's subjective complaints of pain [Doc. 15 at 9–17]; and,

2.    reasonably found that, in light of her RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy properly relying on the testimony of the vocational expert [*id*. at 17–19].

The Commissioner also contends that the evidence submitted to the Appeals Council was cumulative and unpersuasive when considered in light of the record; and, substantial evidence of record, including the evidence submitted to the Appeal Council, supports the ALJ's decision. [*id*. at 20–21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

4

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under

6

sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from

employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

11

primarily from an exertional impairment, without significant nonexertional factors.[7]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we

have found that the grids cannot be relied upon to show conclusively that claimant is not

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

prove by expert vocational testimony that despite the combination of exertional and

nonexertional impairments, the claimant retains the ability to perform specific jobs which

exist in the national economy.").  The purpose of using a vocational expert is "to assist the

ALJ in determining whether there is work available in the national economy which this

particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's

testimony to be relevant, "it must be based upon a consideration of all other evidence in

the record, . . . and it must be in response to proper hypothetical questions which fairly set

out all of claimant's impairments."  *Id.* (citations omitted).

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

13

opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v.*

14

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## BRIEF MEDICAL HISTORY

Medical records show that on April 10, 2009, Plaintiff visited the emergency room of HealthPort Connect in Atlanta, Georgia complaining of nausea, vomiting, and blood in her stool. [R. 231.]  Notes from the visit indicate she has history of asthma and arthritis, and a review of her systems was negative. [*Id*.] Plaintiff was diagnosed with acute gastroenteritis and was discharged significantly improved. [R. 232.]

On December 30, 2009, Plaintiff visited the emergency room of Coastal Carolina Hospital ("CCH") complaining of left arm numbness and pain under her left rib and left breast.  [R. 255–256.]  Notes indicate Plaintiff's cardiac size was normal and no acute cardiopulmonary disease was observed.   [R. 265.]   A CT scan of the chest was recommended. [*Id*.] Chest imaging was performed on the same day with no acute abnormalities found. [R. 270.]   On January 4, 2010, Plaintiff returned to the emergency room of CCH complaining of pain in her chest and tightness under her left breast that radiates into the left arm.  [R. 241–242.]  Plaintiff also reported numbness in her left arm and hand. [R. 242.] Upon examination, no acute abnormalities were identified.  [R. 252.]

On July 14, 2010, Plaintiff presented to Beaufort Memorial Hospital radiology department for a consultative exam. [R. 274.]  Plaintiff complained of pain in her back beneath her left scapula sometimes and in her lumbar spine all of the time, with radiation into the left hip. [R. 276.]  Plaintiff indicated she can sit for 2 hours, walks minimally and uses a cane all of the time; she also complained of pain in her knees, elbows, shoulders, hands and feet, as well as swelling in her joints at times.  [*Id*.]   Notes by Dr. Harriett R. Steinert indicate Plaintiff was able to get on and off the exam table without difficulty by

herself; there was a full range of motion of the cervical spine; no tenderness to palpitation of the neck; lungs clear to percussion and ausculation with no wheezes, ronchi or rales; with regular heart rate and no murmurs or other abnormal heart sounds; full range of motion of all joints in all four extremities except for her shoulders and her left hip (she could elevate her shoulders to 120 degrees in any direction with pain and could not rotate her left hip more than 5 degrees in either direction).  [R. 276–77.]  No sensory or motor deficits were found in any extremity, no muscle atrophy, grip strength was normal and equal bilaterally, and there were normal and equal fine motor and gross motor skills in both hands.  [R. 277.]  Deep tendon reflexes were equal and normal in all extremities.  [*Id*.] Plaintiff was also able to walk across the room without an assist device with a very antalgic gait; she could not walk on her toes and heels.  [*Id*.]  Also on July 14, 2010, Plaintiff received an x-ray of her lumbar spine.  [R. 274.]  Dr. Malcolm Corley diagnosed mild-to-moderate lumbar scoliosis convex to the left side and moderate degenerative changes at the L1-L2 disk level.  [R. 274.]  No acute bony abnormality was seen.  [*Id*.]

A Physical RFC completed by Dr. Angela Saito ("Dr. Saito") on August 20, 2010, indicates Plaintiff can occasionally lift/carry 20 lbs; frequently lift/carry 10 lbs; stand/walk at least 2 hours in an 8-hour day; sit about 6 hours in an 8-hour work day; push/pull in unlimited fashion; occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl, and never climb ladders, ropes or scaffolds; and has limited reaching; and unlimited handling, fingering, and feeling.  [R. 317–19.]  Plaintiff is to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gasses, and poor ventilation.  [R. 320.]  Plaintiff should also avoid all exposure to hazards such as machinery and heights.  [*Id*.]  Dr. Saito indicates she reviewed medical records from April 10, 2009

19

(Memorial Health Hospital); December 2009 and January 2010 (Costal Carolina Medical Center); July 14, 2010 (Dr. Steinert); July 9–22, 2010 (Arthritis Treatment Center) and ADL's from August 20, 2010.  [R. 321–23.]

A Physical RFC completed by Dr. Cleve Hutson ("Dr. Hutson") on December 2, 2010, indicates Plaintiff can occasionally lift/carry 20 lbs; frequently lift/carry 10 lbs; stand/walk at least 2 hours in an 8-hour day; sit about 6 hours in an 8-hour work day; push/pull in unlimited fashion; occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl, and never climb ladders, ropes or scaffolds; and has limited reaching; and unlimited handling, fingering, and feeling.  [R. 336–38.]  Plaintiff is to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gasses, and poor ventilation.  [R. 339.]  Plaintiff should also avoid all exposure to hazards such as machinery and heights.  [*Id*.]  Dr. Hutson indicates he reviewed medical records from December 2009 and January 2010 (Costal Carolina Medical Center); July 14, 2010 (Dr. Steinert); and July 9–22, 2010 (Arthritis Treatment Center).  [R. 337, 342.]

A Multiple Impairment Questionnaire completed by Plaintiff's rheumatologist Dr. John Brittis on June 17, 2011, indicates he began treating Plaintiff from July 9, 2010, and saw her approximately every 3 months.  [R. 343.] According to his responses on the questionnaire, Dr. Brittis indicated Plaintiff presented with inflammatory arthritis with swelling to the hands/feet ambulating with the use of a cane.  [*Id*.]  Dr. Brittis treated her with steroids and asked Plaintiff to get blood work done but she never did due to her inability to pay.  [*Id*.]  Dr. Brittis indicated Plaintiff represented her primary symptoms as pain (including chronic back and knee pain), swelling, numbness, and fatigue.  [R. 344.] He also indicated her pain was worse in the morning with weight bearing.  [R. 345.]

20

Dr. Brittis estimated Plaintiff's pain level and level of fatigue at severe (9/10). [*Id.*] As a result of her impairments, Dr. Brittis estimated Plaintiff's RFC to include the ability (during an eight-hour day) to sit for 2 hours (although not necessary or medically recommended that she not sit continuously in a work setting); stand/walk for 2 hours (although not necessary or medically recommended that she not stand/walk continuously in a work setting); get up and move around every 2 hours and sit again after 1 hour; and occasionally lift/carry up to 5 pounds, but never more than 5 pounds. [R. 345–46.] Dr. Brittis also indicated Plaintiff would have significant limitations doing repetitive reaching, handling, fingering, or lifting because of worsening pain to hands and shoulders. [R. 346.] He also indicated Plaintiff had marked limitations in her upper extremities in grasping, turning, and twisting objects; using fingers/hands for fine manipulations; and using arms for reaching, including overhead. [R. 347.]

Dr. Brittis further opined Plaintiff's symptoms would likely increase if she were placed in a competitive work environment and that her condition would interfere with her ability to keep her neck in a constant position (e.g., looking at a computer screen or looking down at a desk). [*Id*.] Consequently, Dr. Brittis opined that Plaintiff could not do a full time competitive job that requires activity on a sustained basis; that pain, fatigue, or other symptoms were severe enough to frequently interfere with attention and concentration; that Plaintiff's depression contributes to the severity of her symptoms and functional limitations; that Plaintiff was incapable of even "low stress" work due to her pain; and that she would need to take unscheduled breaks every half hour to an hour and would need to rest every half hour before returning to work. [R. 348.] Dr. Brittis indicated Plaintiff would be absent

from work more than three times a month. [R. 349.] Dr. Brittis opined these limitations were present beginning, at the earliest, July 9, 2010. [*Id*.]

Treatment notes show that on August 30, 2011, Plaintiff presented to Dr. Samai Supan ("Dr. Supan") of Beaufort Jasper Hampton Comprehensive Health Services, Inc., regarding an acute discomfort and to establish a medical home. [R. 355.] Plaintiff complained of chronic pain occurring constantly throughout the day. [*Id*.] Dr. Supan noted on exam normal range of motion, decreased on flexion, extension, adduction, and abduction in upper and lower extremities; pain on movement in bilateral shoulders and bilateral knees; and 5/5 strength in all extremities. [R. 356.] Plaintiff saw Dr. Supan again on October 3, 2011, on follow up complaining of swelling and pain on the right side of her face and a rash (possibly due to eating shrimp). [R. 366.] She complained of pain in the right shoulder, right arm, right hand, left hip and left foot. [*Id.*] On exam, her extremities were normal except for pain and tenderness in the right shoulder and right upper arms with swelling and tenderness in both. [*Id.*]

## APPLICATION AND ANALYSIS

**Residual Functional Capacity**

The Plaintiff argues the ALJ's decision is flawed because he (1) improperly weighed the treating rheumatologist's opinion of Dr. Brittis and gave greater weight to the opinions of non-examining physicians [Doc. 14 at 8–11]; (2) failed to properly evaluate Plaintiff's credibility [*id*. at 11–14]; and (3) relied on flawed vocational expert testimony [*id*. at 14–16]. Plaintiff further contends the new and material evidence from treating physician Dr. Supan provided to the Appeals Council warrants remand. [*id*. at 16–18.]

22

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ reasonably discounted the opinion of Dr. Brittis and properly considered Plaintiff's subjective complaints of pain [Doc. 15 at 9–17], and, reasonably found that, in light of her RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy properly relying on the testimony of the vocational expert [*id*. at 17–19]. The Commissioner also contends that the evidence submitted to the Appeals Council was cumulative and unpersuasive, and, substantial evidence of record, including the evidence submitted to the Appeal Council, supports the ALJ's decision. [*id*. at 20–21.]

The Court analyzes Plaintiff's second allegation of error related to her credibility as a challenge to the ALJ's RFC findings. Based on the factual evidence and the applicable legal authorities, this Court finds that substantial evidence does not support the ALJ's RFC determination.

### *ALJ's RFC Determination*

The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

23

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

Id. at 34,476.

To assess Plaintiff's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

24

### *The ALJ's Credibility Analysis*

Plaintiff argues that the ALJ's findings (the fact that Plaintiff could babysit with help from her sister, visit with others, and participate in other brief activities of daily living on a sporadic basis) were insufficient to find Plaintiff's testimony concerning her pain not credible. [Doc. 14 at 13.] Additionally, Plaintiff contends the ALJ failed to appreciate that her main impairment was rheumatoid arthritis, not her spinal condition, and that she could not afford additional treatment and testing. [*Id.*] Plaintiff also takes issue with the ALJ's belief that it was significant that she was not prescribed a cane although the medical records support the need for the device. [*Id.* at 14.]

In considering Plaintiff's testimony regarding her limitations, the ALJ must consider all relevant evidence of record. *See* SSR 96-7p, 61 Fed. Reg. at 34,485 (whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record). The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the

25

location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms.  20 C.F.R. § 1529(c)(3).  If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination.  *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

In considering Plaintiff symptoms, the ALJ followed a two-step process by which he first determined that Plaintiff had an underlying medically determinable physical or mental impairment that could reasonably be expected to produce her pain or other symptoms. Specifically, the ALJ noted Plaintiff's testimony that she stopped working in April 2010 due to severe swelling in her feet and pain in her back, hips, feet, hands, shoulders, and elbows.  [R. 19.]  The ALJ also noted Plaintiff's allegation that she suffers from knee pain and swelling. [*Id*.]  Plaintiff testified that she could sit or stand for less than one hour at a time; could only alternate sitting and standing for only 1 to 2 hours at a time if she was unable to lie down; could only lift 5 pounds and could not reach overhead, push, or pull because of shoulder pain, or bend or stoop because of her pain.  [*Id*.]  Plaintiff also testified that she ambulates with a cane prescribed by Dr. Brittis in July 2010, and that she suffers from chest pain and difficulty breathing due to fluid around her heart and in her lungs.  [*Id*.] Plaintiff indicated she was only treated in the emergency room for her alleged heart

problems and that she was treated with steroids and an inhaler for her asthma symptoms.

[*Id.*]

At the second step of the two-step process, the ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limited effects of these symptoms are not fully credible to the extent they are inconsistent with the RFC. [R. 22.] The ALJ explained as follows:

> The medical evidence of records indicates that while the claimant has received treatment for her severe impairments since her application date, the claimant's symptoms are not as limiting as she alleged. In terms of the claimant's asthma, a December 2009 and a January 2010 ECG were completely normal with normal sinus rhythms despite her allegations of chest pain. Additionally, a January 2010 CT scan of the chest revealed no acute cardiopulmonary disease, no evidence for right hilar mass or adenopathy and no pulmomonary infiltrate, pleural effusion or pulmonary nodules. The claimant was prescribed an Albuterol inhaler, Flovent Inhalation Aerosol, Proventil and Vitaril in May 2010 for her symptoms. (Exhibit 2F). Upon examination in July 2010, the claimant's lungs were clear to percussion and auscultation without any wheezes, rhonchi or rales. (Exhibit 5F). Once again, in August and October 2011, the claimant's lungs ere clear to auscultation and percussion and her breath was non-labored. (Exhibit 13F).
>
> In terms of the claimant's degenerative disc disease, July 2010 x-rays of the lumbar spine revealed only mild to moderate lumbar scoliosis and moderate degenerative changes at L1-2. (Exhibit 4F). At a July 2010 consultative examination, the claimant reported pain in her lumbar spine that radiated to her left hip. She also alleged that she always ambulated with a cane and she could only sit for 2 hours at a time. Upon examination, she was able to get on and off the examination table without difficulty. Her peripheral pulses and deep tendon reflexes were normal and equal in all extremities. The claimant was able to flex at the waist to 70 degrees and fully laterally flex. She displayed moderate tenderness to palpation of the

lumbar spine and paraspinous muscles but the straight leg raising test was negative on the right side. The straight leg raising test was positive on the left side at 25 degrees; however, she was able to walk across the room without an assistive device despite her antalgic gait. She was diagnosed with lumbar spine pain of unknown etiology. (Exhibit 5F). Notably, in August 2011, the claimant ambulated with a cane but appeared in no acute distress. (Exhibit 13F).

In terms of the claimant's arthritis, the claimant alleged occasional joint swelling in July 2010. Once again, she was able to get on and off the examination table without difficulty. She displayed a full range of motion in all joints of all 4 extremities aside from her shoulders and left hip. Although she could not rotate her left hip more than 5 degrees in either direction, she was able to elevate her shoulders to 120 degrees in all directions. She exhibited only moderate tenderness to palpation of her hand joints but there was no swelling, inflammation or deformity. Furthermore, there was no sensory or motor deficits in any extremity. Notably, her grip strength was normal at 5/5 and equal bilaterally. Her fine and gross motor skills were normal and equal in both hands. (Exhibit 5F). Subsequently, the claimant was diagnosed with inflammatory arthritis due to swelling in her hands and feet, an elevated sedentary rate and an elevated L-reactive protein. (Exhibit 11F). In August 2011, the claimant alleged pain throughout her legs, hips, arms and hands. She reported Celebrex caused side effects and Lortab did not help her pain. Her musculoskeletal examination was normal except for a decreased range of motion upon flexion, extension, adduction and abduction in the upper and lower extremities; however, she exhibited 5/5 strength in all extremities. Additionally, there was no evidence of any edema, deformities, cyanosis or vericosities and her peripheral pulses were intact. The claimant was prescribed Lortab for her arthritis pain. In October 2011, the claimant was diagnosed with rheumatoid arthritis and Prednisone was added to her medication regimen. (Exhibit 13F.)

Following a thorough review of the evidence of record, I find that the claimant's reports to her treating and examining physicians, as well as findings upon objective examination, are inconsistent with the claimant's reports and testimony of such significant complaints of pain and dysfunction. Specifically, the claimant's activities of daily living are inconsistent with her

allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The evidence of record indicates that despite the claimant's complaints and allegations, she has admitted that she was able to baby-sit her 3-year old nephew with her sister, visit with her niece and boyfriend, load the dishwasher, fold clean clothes, dust, cook, watch television, attend church every Sunday, sing in the church choir, attend choir rehearsals every Thursday, shop with an electric cart, walk for exercise, dress herself and put on jewelry, activities which generally involve functioning at a greater level than alleged. (Exhibit 5E). Such activity is inconsistent with the functional limitations alleged by the claimant. I also note that her descriptions of her daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests. Overall, these activities, when viewed in conjunction with the other inconsistencies regarding the claimant's allegations of pain and dysfunction, further limit the claimant's credibility in discussing her symptoms.

Although the claimant alleged disabling pain from degenerative disc disease and rheumatoid arthritis, the claimant never underwent an MRI of the lumbar spine. (Exhibit 5F). July 2010 x-rays of her lumbar spine revealed only mild to moderate findings and she was never recommended for surgery or even a TENS unit. Additionally, there is no evidence of record that shows her cane was prescribed by Dr. Brittis or any other physician. Upon examination in July 2010, the claimant was able to ambulate without a cane and get on and off the examination table without difficulty. There was no evidence of any inflammation, swelling, or deformity in any joint and her grip strength and motor skills were normal in all extremities. Likewise, August 2011 treatment notes showed the claimant presented in no acute distress and there were not significant abnormalities in any of her extremities. While her range of motion was decreased in her extremities, all other musculoskeletal tests, including her strength, were normal. (Exhibits 4F, 5F and 13F). In terms of her asthma symptoms, in July 2010, August 2011 and October 2011, the claimant's lungs were clear to percussion and ausculation without any wheezes, ronchi or rales. Furthermore, the claimant denied any chest pain. While the claimant testified that she had fluid in her lungs, she was never diagnosed or treated for this condition and she never took any medication for this symptom. (Exhibits 5F and 13F).

The record also reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as alleged in connection with this application and appeal. Treatment notes from June 2011 showed the claimant was instructed to obtain blood work and additional laboratory tests for her arthritis symptoms; however, the claimant never had this done. (Exhibit 11F). A claimant's failure to follow prescribed treatment without good reason can be grounds to find the claimant not disabled. 20 CFR §404.1530. While the claimant complained of an inability to afford treatment or medication, the evidence of record fails to indicate that the claimant ever attempted to avail herself of no cost to low cost medical providers which might be available within her surrounding community.

I find that the claimant's complaints at the hearing were significantly more sever than those described to her physicians. While the claimant testified to being essentially bedridden for most of every day, physical examination has failed to reveal any muscle wasting or atrophy which one would expect to see considering the claimant's allegations of severe physical limitations. (Exhibit 5F and 13F). Additionally, there is no evidence of record that shows the claimant could only sit or stand for less than one hour at a time or only lift up to 5 pounds, as her presentation upon examination was generally normal other than a slight decrease in range of motion in her shoulders and left hip. Overall, the claimant never reported or exhibited such limitations to her physicians; therefore, the claimant's testimony regarding her limitations is not substantiated. Having considered all of the above, I find that the claimant's allegations of total inability to work are overstated and unsupported by the medical evidence of record.

[R. 19–22.]

### Discussion

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996).

In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

"[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Id*. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." *Craig*, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." *Id*. The ALJ is within bounds to disregard Plaintiff's testimony to the extent it is inconsistent with the objective medical evidence in the record. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir.2005); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986); *see also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (noting that the "only fair manner to weigh a subjective complaint is to examine how pain affects the routine of life"). The ALJ's responsibility is to "make credibility determinations—and therefore sometimes must make negative determinations—about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985).

The Plaintiff takes issue with the ALJ's finding that her cane was not prescribed by Dr. Brittis or any other physician, arguing that SSR 96-9p[8] does not require that a physician prescribed the device but that only a disturbed gait be shown.  [Doc. 14 at 14.] Consequently, the ALJ did not include Plaintiff's use of a cane as a limitation in her RFC. Upon review of the evidence of record, the Court finds there is conflicting evidence regarding whether Plaintiff's cane was medically necessary.  There is evidence in the record, for instance, that Plaintiff was able to walk without an assist device.  [*See, e.g.*, R. 277 (Dr. Steinert indicated that Plaintiff "is able to walk across the room without an assist device with a very antalgic gait"); R. 288, 302 (Notes from Coastal Carolina Medical Center indicate Plaintiff "is able to ambulate independently").]  However, there is also evidence, that Plaintiff used a cane to ambulate.  [*See, e.g.,* R. 43 (Plaintiff testified that she uses her cane "all the time" and that she uses a motorized shopping cart in stores); R. 276 (Dr. Steinert noted Plaintiff's report that she "walks minimally and uses a cane all the time"); R. 321 (Dr. Saito noted Plaintiff's ADL's from August 2010 indicate she walks with a cane).] Furthermore, Drs. Saito and Hutson, whose opinions the ALJ gave great weight, indicated that Plaintiff's ability to stand/walk was limited to 2 hours in an 8-hour day [*see*, R. 317, 336]; that Plaintiff's allegation of "inability to walk more than minimally" was "credible for the most part"  [R. 321, 340]; and that Plaintiff walked with a "very antalgic gait" and could

---

[8]SSR 96-9p is directed to providing guidance regarding the impact of various RFC limitations and restrictions on the unskilled sedentary occupational base. SSR 96-9p provides that, to find a hand-held device is medically required, there must be "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p, 61 Fed.Reg. 34,478–01, at 34,482 (July 2, 1996).

not toe/heel walk. [R. 317, 340.] The ALJ's RFC did not include any limitation on the amount of time Plaintiff could walk in an 8-hour day.

The Court notes that Appendix One (Listing of Impairments) of the regulations, provides that "[t]he requirement to use a hand-held assistive device may [] impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4).  Thus, while the cane may not have been medically prescribed by a doctor, the evidence of record suggests Plaintiff has some difficulties ambulating and may, at least at times, require the use of an assist device.  It appears from a reading of the ALJ's decision, however, that the ALJ rejected outright Plaintiff's claim that she requires the use of a cane merely because it was not prescribed by a doctor, and without any explanation as to how he resolved the conflicting evidence of record regarding Plaintiff's use of the cane, or whether he considered the use of a cane in determining Plaintiff's RFC at all.  *See Hamlin v. Colvin*, C/A No. 8:12-3601-RMG-JDA, 2014 WL 587464, at *13–14 (D.S.C. Jan. 23, 2014) (ALJ improperly failed to discuss whether Plaintiff's cane was medically necessary when determining the RFC), *adopted*, 2014 WL 588073, at *6 (D.S.C. Feb. 14, 2014).  Furthermore, it is unclear whether the introduction of an assist device to the sit/stand option would further erode the occupational base for light work.  Accordingly, because the ALJ failed to explain his reasoning for discrediting Plaintiff's testimony regarding her need of an assist device for ambulation, the Court cannot find that the ALJ's RFC finding is supported by substantial evidence.  *Cf. Ware v. Colvin*, C/A No. 0:12-2965-MGL, 2014 WL 526271 at *9 (D.S.C. Feb. 10, 2014) (discussing term of art "inability to ambulate effectively").

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain his credibility determination with respect to Plaintiff's alleged need for an assist device for ambulation a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error[9] by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, its is recommended that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.


<u>s/Jacquelyn D. Austin</u>

May 7, 2014                            Jacquelyn D. Austin
Greenville, South Carolina             United States Magistrate Judge

---

[9]Plaintiff further claims the ALJ improperly weighed the opinion of her treating physician Dr. John Brittis and relied on flawed vocational expert testimony. [*See* Doc. 14 generally.] Plaintiff further alleges the Appeals Council improperly declined to consider new evidence in the form of treatment notes and opinion evidence dated January 12, 2012, from Dr. Samai Sapan. [*Id., see also* R. 358–380.]